UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAPITOL INFRASTRUCTURE, LLC,

    Plaintiff,

v.                                                                         CASE NO: 8:06-cv-1347-T-26EAJ

HERNANDO COUNTY, FLORIDA, and
BRIGHT HOUSE NETWORKS, LLC,

    Defendants.
    _____/

**O R D E R**

Before the Court are cross motions for summary judgment. Bright House Networks, LLC (Bright House) filed a Motion for Summary Judgment and Statement of Undisputed Facts with attachments (Dkt. 135), and Capitol Infrastructure, LLC (Capitol) filed its Opposition, Statement of Disputed Facts, Supplemental Declaration of Jeff Hathaway, and the deposition of Jeromy Edwards and attachments. (Dkts. 141, 143, 144 & 145). Capitol filed a Motion for Final Summary Judgment, Statement of Undisputed Facts, and numerous attachments including deposition transcripts and exhibits (Dkts. 127, 129-136) to which Bright House filed its Opposition. (Dkt. 140). Hernando County filed a response joining in with Bright House. (Dkt. 142).[1]  After careful consideration of the

---

[1] The County correctly asserts that the enactment of section 610.102, Florida Statutes, now designates the Florida Department of State, and not the County, as the sole authority to grant cable and video franchises in the state. Based on this new statute, the

submissions of the parties and the applicable law, the Court concludes that both motions should be denied as moot and the action dismissed as this Court is without subject matter jurisdiction.

## FACTUAL ASSERTIONS

Plaintiff Capitol installs fiber optic cable infrastructure for telephone, video, and internet services in new residential communities. Capitol, in turn, leases the infrastructure to third party providers who actually furnish the telephone, video, and internet services. Capitol contracted with the Villages of Avalon (Avalon) to install this type of infrastructure prior to the dedication of rights of way in the development. Avalon granted Capitol the necessary private easements to complete the installation and Capitol installed conduit throughout Avalon. Although the conduit was placed in areas where the infrastructure would cross under streets not yet dedicated, it was always placed within Capitol's private easements. The infrastructure is used solely to provide voice, internet, and data services to the residents of Avalon. Capitol installed all of the infrastructure for Avalon without a franchise agreement with the County.

The installation of the infrastructure occurs entirely within private easements on private property.[2] The private easements were granted to Capitol from Avalon as part of

---

County takes the position that the granting of either motion for summary judgment should fully resolve all claims related to the County. For purposes of the motion filed against the County, the County adopts the arguments of Bright House as its own.

[2] See docket 60, Amended Complaint at para. 11.

a written document titled "Easement and Memorandum of Agreement" (the Recorded Easement).[3]  The Recorded Easement, which was executed on August 12, 2005, and recorded on August 18, 2005, purports to grant a "blanket easement" to Capitol over the entire development.  Avalon had presented the Plat, which made reference to a telecommunications easement by "separate instrument," earlier to the County on June 7, 2005.  The County approved the Plat on August 16, 2005, and the Plat was recorded on August 24, 2005.  The County contends that it did not have actual notice of the blanket easement when it approved the Plat, although there was apparently no effort to ascertain the import of the aforementioned "separate instrument."

Approximately one year later on August 8, 2006, the County cited Capitol for violations of the Hernando County Code, specifically the failure "to obtain a franchise to operate a cable system" in Avalon.[4]  The citation included a daily fine of not more than $15,000 per day.  The hearing before the County Special Master was set for July 24, 2006.[5]  Capitol filed this action in this Court just prior to the hearing.

## PROCEDURAL BACKGROUND

On July 21, 2006, Capitol filed a complaint for emergency relief to maintain the status quo and avoid enforcement of the Hernando County Code and the maximum

---

[3] See docket 60, Ex. A.

[4] See docket 60, Ex. C.

[5] See docket 60, Exs. C & D.

$15,000 per day fine.[6]  Capitol sought declaratory and injunctive relief pursuant to this Court's federal question jurisdiction based on the Communications Act of 1934, 47 U.S.C. § 151, et. seq., as amended (the Act), and also jurisdiction based on diversity of citizenship.  The County essentially took the position that Capitol had failed to comply with the franchise requirements under the Hernando County Code because Capitol was acting as a non-franchised cable operator by providing the type of cable services subject to the requirements of the Hernando County Code.  The County sought to require Capitol to apply for and obtain a cable franchise with the County to operate a cable system.  Shortly after this action was filed, Bright House sought to intervene, which this Court permitted.[7]

Capitol then filed an Amended Complaint against both Bright House and the County.  Bright House answered and filed a counterclaim against Capitol for declaratory and injunctive relief, seeking a declaration that Capitol's stated plan constitutes the provision of cable service that requires a cable franchise under 47 U.S.C. § 541(b) (in count I) and under section 166.046, Florida Statutes (in count II).[8]  The County filed a

---

[6] See docket 1.

[7] See docket 38, Order granting intervention dated Aug. 18, 2006.  This Court permitted intervention because Bright House, as a potential competitor who holds a franchise agreement in Hernando County, held an interest in this litigation.

[8] The parties stipulated to the dismissal of the third count which sought declaratory and injunctive relief with respect to Capitol's stated plan in connection with Hernando County's ordinances, thereby leaving counts I and II only.  See docket 126, Notice of Partial Voluntary Dismissal dated Aug. 29, 2007.

counterclaim against Capitol for declaratory relief to determine the validity of a blanket easement found in a recorded easement of which the County claims it was unaware of at the time the County initially approved the plat.[9]  After all of the pleadings became closed, the Florida legislature enacted the Consumer Choice Act of 2007 (CCA), which repealed Florida statute section 610 and which became effective May 18, 2007.  See 2007 Fla. Sess. Law Serv. Ch. 2007-29 (West).  The former statute granted the County the authority to enforce cable franchises.  The newly enacted CCA took that authority away.

## STANDING

Before addressing the merits of this action, this Court must determine whether Bright House and the County have standing to pursue their claims as counterclaimants. Standing is a "threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  Dillard v. Baldwin County Comm'rs, 225 F.3d 1271, 1275 (11th Cir. 2000).  There are three requirements of irreducible constitutional minimum standing under Article III: (1) an injury in fact, which must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and conduct complained of; and (3) a likelihood of redress for the injury as opposed to a speculative redress.  Id. at 1275 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119

---

[9]  See docket 87, Amended Counterclaim.  The County voluntarily dismissed all claims against Capitol involving the enforcement of its ordinances.  See docket 116, Notice of Voluntary Dismissal of County Code enforcement claim, dated Aug. 1, 2007.

L.ED.2d 351 (1992)). A redressable injury must be established before a court may render a decision because any decision issued absent a redressable injury would be tantamount to an advisory opinion contrary to Article III. See Church v. City of Huntsville, 30 F.3d 1332, 1335 (11th Cir. 1994).

Although this Court permitted Bright House to intervene in the early stages of this lawsuit, that determination did not constitute a finding of constitutional standing. An absence of Article III standing, however, does not "automatically disentitle" an entity the right to intervene. See Clark v. Putnam County, 168 F.3d 458, 463 (11th Cir. 1999) (citing Chiles v. Thornburgh, 865 F.2d 1197, 1212 (11th Cir. 1989), which holds that Rule 24 intervention presumes there is a case or controversy whereas standing doctrine ensures there is a case or controversy and therefore subject matter jurisdiction). Intervenors need not even argue that they possess the three requisites of standing— injury-in-fact, causation, and redressability— because of lessened justiciability concerns in the context of an ongoing Article III case or controversy among other parties. See Dillard v. Chilton County Comm'n, 495 F.3d 1324, 1336 (11th Cir. 2007). Having now established the perspective from which the decision to intervene was made, permitting Bright House to intervene as presumably a competitor in the field of cable services at the outset of this action does not mandate the continued enjoyment of the status of a party for purposes of standing at this later time in the litigation.

There is no question that the County no longer has standing in this litigation. The parties through mediation dismissed all claims relating to the County ordinance. Such a

resolution was predictable, particularly in view of the change in Florida's regulatory scheme as it relates to the franchising of cable services.[10] The new scheme removed from the County its authority to grant cable and video franchises, and placed that power with the Florida Department of State. See § 610.102, Fla. Stat. Thus, the very reason for the filing of this action— to challenge the enforcement of the County Code— dissipated with the enactment of the CCA. The County was and is no longer the authoritative state body for the granting of franchises, and its Code was and is no longer valid with respect to forcing any entity to obtain a franchise. The County therefore no longer has standing to bring its remaining counterclaim for a declaration as to the ramifications of the blanket easement placed in the easement granted from Avalon to Capitol.

With respect to Bright House, it asserts it possesses continued standing, relying on three cases: Centel Cable Television Co. of Fla. v. Admiral's Cove Assocs., Ltd., 835 F.2d 1359 (11th Cir. 1988); Centel Bable Television Co. of Fla. v. Thos. J. White Dev. Corp., 902 F.2d 905 (11th Cir. 1990); and Cable Holdings of Ga., Inc. v. McNeil Real Estate Fund VI, Ltd., 953 F.2d 600 (11th Cir. 1992). These cases all recognize a competitor's private right of action under the Act to challenge competitors' practices.

---

[10] The state of Florida may regulate cable operators and the services, equipment, and facilities they provide to the extent that Florida's statutes are consistent with the Act. 47 U.S.C. § 544(a).

Bright House asserts that its standing also derives from the express level playing field provision in its existing franchise.[11]

Admiral's Cove involved an incumbent cable franchise's right to place its cable wires along the utility easements located in a new residential development when it feared a competing company was entering into an arrangement with the developer to lay its wires in the utility easements. Thos. J. White held that a developer could not exclude a cable company from using private roads to gain access to dedicated utility easements. Lastly, while some judges believe Cable Holdings of Georgia is in conflict with the prior two Eleventh Circuit opinions of Admiral's Cove and Thos. J. White, that case distinguished the prior two opinions and held that the Act does not authorize a franchised cable company's right to access private, non-dedicated easements. A district judge in the Middle District noted that the Eleventh Circuit was probably well aware of the possible effect of Cable Holdings of Georgia on the ability of developers to install cable lines and record the plat without having to provide access to competing cable companies, but that the strictures of running afoul of the Takings Clause required it to do so. See Comcast SCH Holdings, Inc. v. Villages of Lake-Sumter, Inc., 168 F.Supp.2d 1338, 1342 (M.D. Fla. 2001).

---

[11] The Court notes that Bright House has applied and received franchises from the state, which were granted on July 2, 2007. Bright House, for whatever reason, did not apply with the state for a franchise in Hernando County, which leaves its existing franchise agreement with Hernando County in effect.

Capitol responds to the standing issue by citing <u>Malowney v. Federal Collection Deposit Group</u>, 193 F.3d 1342, 1348 (11th Cir. 1999), and <u>Channel One Sys., Inc. v. Connecticut Dep't of Public Utility Control</u>, 639 F.Supp. 188 (D.Conn. 1986), for the proposition that even if standing exists, which it contends it does not, Article III's case-or-controversy requirement cannot be met.  <u>Malowney</u> makes it clear that federal courts may only adjudicate actual cases or controversies under Article III, and in the case of standing, the claimant must show that he will suffer injury in the future.  <u>Malowney</u>, 193 F.3d at 1346-47.  The continuing dispute must not be contingent or speculative.  In <u>Channel One</u>, although not binding precedent, the district court declined to consider a declaratory judgment action concerning whether infra-red links crossing public rights of way were subject to franchise regulation because the exact final, configuration and therefore uses of the public rights of way was unknown and therefore any ruling would "reach far beyond the particular case."  <u>Channel One</u>, 639 F.Supp. at 198 (quoting <u>Public Service Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed.2d 291 (1952)).  Having considered all of the arguments and applicable law regarding standing, the Court deems it prudent at this juncture to delve further into the case-or-controversy requirement.

## CASE OR CONTROVERSY

In addition to the requirement of standing under Article III of the Constitution, the "case-or-controversy" requirement also exists.  "This case-or-controversy doctrine fundamentally limits the power of federal courts in our system of government, and helps

to 'identify those disputes which are appropriately resolved through judicial process.'" National Advertising Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005) (quoting Georgia State Conference of NAACP Branches v. Cox, 183 F.3d 1259, 1262 (11th Cir. 1999) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990)). As stated by the Eleventh Circuit, "the prudential aspect asks whether it is appropriate for this case to be litigated in a federal court by these parties at this time." National Advertising, 402 F.3d at 1339. This Court finds that it is not appropriate for this district court to decide this case among these parties at this time.

### *Ripeness*

The ripeness doctrine generally deals with "when a party can seek pre-enforcement review." Elend v. Basham, 471 F.3d 1199, 1210-11 (11th Cir. 2006). A two-part test exists to determine ripeness: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties if the court withholds its consideration. See Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." Id. The Court must determine "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Id. (quoting Cheffer v. Reno, 55 F.3d

1517, 1524 (11th Cir. 1995)).[12]  In this case, the absence of any conclusive and definitive governmental action on the part of any governmental entity deprives the parties of any relief from this Court.

*Mootness*

The Court finds the following explanation of the mootness doctrine beneficial in deciding that this action is moot, thereby requiring dismissal as violative of the case-or-controversy jurisdictional requirement for this Court:

> The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy. [A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. . . . [A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.  If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed.  Indeed, dismissal is required because mootness is jurisdictional.  Any decision on the merits of a moot case or issue would be an impermissible advisory opinion.

Troiano v. Supervisor of Elections in Palm Beach County, 382 F.3d 1276, 1282 (11th Cir. 2004) (quoting Najjar v. Ashcroft, 273 F.3d 1330, 1335-36 (11th Cir. 2001)).

---

[12]  For an even more recent Eleventh Circuit case articulating the case-or-controversy requirement as it pertains to ripeness, see Hugh Johnson Enters., Inc. v. City of Winter Park, 231 Fed.Appx. 848, 849 (11th Cir. 2007).

The County's actions precipitated this lawsuit when it cited Capitol for its failure to apply for a franchise agreement in July 2006. At that time, the state of Florida had placed the franchising authority in the hands of the County, which it was permitted to do under the Act. All the ensuing pleadings and motions filed by Capitol, Bright House, and the County, derived from the initial act of the County imposing fines on Capitol for failure to obtain a franchise. None of the allegations and claims asserted in the various pleadings address any action which did not stem from that initial citing by the County. It is against this backdrop that the case or controversy, which then existed, vanished with the enactment of the CCA.

The CCA removed the franchising authority from the counties and placed it in the Florida Department of State. Thus, the very act on which this entire chain of events began, as well as the authority behind the act, vanished with the elimination of the County's authority. The County prudently withdrew its citation, and the parties dismissed the specific counts in the suit which were based on the violation of the County Code. Had the parties not taken this course of action, however, this Court would have no choice but to dismiss those specific counts as moot. Just as those counts became moot with the enactment of the CCA, all of the issues deriving from the County's action also became moot.

Any discussion of the concept of mootness hinges on the main premise that an issue will not be addressed by a court unless in the exceptional instance in which it is "capable of repetition yet evading review." See City of Los Angeles v. Lyons, 461 U.S.

95, 109, 103 S.Ct. 1660, 1669 (1983) (holding that the "capable-of-repetition doctrine applies only in exceptional circumstances").[13]  In this case, the citation by the County for Capitol's failure to obtain a franchising agreement is not capable of repetition, nor is it evading review.  The Florida Department of State has become the new regulating body within the framework of Florida's franchising, and therefore the County, as the law of Florida now stands, cannot sanction Capitol for failing to obtain a franchise agreement.

This case is specific to the County's determination that Capitol should have obtained a franchise agreement before it laid the infrastructure in Avalon.  It makes no difference in this case that the County, by not dismissing all of the counts of its Amended Counterclaim, or Bright House, by not seeking a franchise from the state for Hernando County, attempted to take "all necessary steps" to prevent this action from becoming moot.  See Ethredge v. Hail, 996 F.2d 1173, 1177 (11th Cir. 1993) (holding that there is a limitation on "all necessary steps" exception to mootness doctrine).  The Court concludes that ruling on any of the issues in this case concerning whether Capitol is a cable operator providing cable services would amount to an advisory opinion based on no existing case or controversy.

---

[13] The "capable-of-repetition" doctrine as an exception to the mootness doctrine occurs only in the two following circumstances: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 481, 110 S.Ct. 1249, 1255 (1990)).

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Capitol's Motion for Final Summary Judgment (Dkt. 127) is **DENIED** as moot.

(2) Bright House's Motion for Summary Judgment (Dkt. 135) is **DENIED** as moot.

(3) The Amended Complaint filed on behalf of Capitol and Amended Counterclaims filed on behalf of Bright House and the County are hereby **DISMISSED** with prejudice.

(4) The Clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on October 29, 2007.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA
UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record